[No. 56277–6.   En Banc.   June 7, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. ROSE
GENIA FJERMESTAD, *Appellant.*

*Robert A. Lewis* (of *Knapp, O'Dell & Knapp*), for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *Roger A. Bennett, Chief Deputy,* for respondent.

CALLOW, C.J.—This case was certified to this court by the Court of Appeals pursuant to RCW 2.06.030(d) because of its broad public import. The issue presented is whether the use of an electronic body wire by detectives, without court authorization and in violation of Washington's privacy act, RCW 9.73, renders all evidence of the transaction inadmissible and thus mandates dismissal. We hold that it does and reverse the defendant's conviction.

The facts are uncomplicated. The Clark County Sheriff's office conducted a 7–month investigation which was aimed at arresting drug dealers.[1] The operation was code named ROPED, which stands for Round up People Enterprising in Drugs. As part of the investigation, officers involved in the operation were required, as a matter of departmental policy, to wear "body wires" when they came into contact with suspected drug dealers. The purpose of wearing the wire was to ensure officer safety. The sheriff's office did not seek judicial authorization to transmit the conversation between the defendant and the officer. The sheriff's office was aware of the State's privacy act.

The Clark County Sheriff's office received several complaints about suspected drug activity in the Crown Park area of Camas. On April 23; 1987, the defendant was approached by a Clark County detective in this park and asked about the possibility of purchasing some marijuana. The defendant responded by asking the detective how much he was interested in buying. After discussing the matter for a few moments, the defendant and a friend left the park. They returned a short time later, at which time

---

[1] The transactions in question all occurred *prior* to the passage of RCW 9.73-.200 *et seq. See* Laws of 1989, ch. 271. The applicable law is that in effect on April 23, 1987.

the defendant entered the detective's car and handed him a gram of marijuana in exchange for $10.

During the entire transaction the detective was wearing an electronic transmitter, or body wire. The transmissions were being sent to two other officers who were parked nearby, but out of sight. The transmitter enabled the two officers to hear what was going on in case their assistance was required. The conversation was not taped nor did the listening officers testify at the defendant's trial.

The defendant was charged with delivery of a controlled substance in violation of RCW 69.50.401(a); to wit: marijuana. Prior to a bench trial, the defendant moved to suppress all evidence obtained by police for violation of the privacy act, or alternatively, a dismissal pursuant to CrR 8.3(b) based on claimed misconduct of the police department. The trial court originally denied motions to suppress and to dismiss. After a bench trial, the defendant was convicted.

The defendant petitioned the trial court for reconsideration of the motions to suppress and to dismiss. On reconsideration, the trial court granted the motion to suppress the conversation between the defendant and the officer but denied the motion to dismiss. The bench trial was reopened and the defendant was found guilty based on the officer's visual observations. Judgment and sentence were entered and this appeal followed.

Washington's privacy act, RCW 9.73, at the time of the conduct in question, prohibited the interception or recording of private conversations unless consent was obtained (a) by all the parties involved in the conversation (RCW 9.73-.030) or (b) if judicial authorization was obtained (RCW 9.73.040). The statute made any information obtained in violation of RCW 9.73 inadmissible in civil or criminal cases.

The origin of Washington's privacy act dates back to 1909 when the Legislature enacted RCW 9.73.010 and

9.73.020.[2] In its original form, the privacy act made it unlawful to divulge information in regard to telegrams and also made it unlawful to open sealed letters.

In 1967, the Legislature enacted legislation which made it unlawful to electronically eavesdrop on private conversations without the consent of all the parties involved or unless the conversation fell within an enumerated exception. These exceptions specifically include matters involving a danger to human life, arson, riot or national security.

RCW 9.73.040, enacted in 1967,[3] provides a mechanism for obtaining court authorization to intercept private conversations. In order to obtain court authorization in accordance with RCW 9.73.040, the following information must be supplied to a superior court judge upon a verified application of the State Attorney General or a county prosecuting attorney:

> (a) There are reasonable grounds to believe that national security is endangered, that a human life is in danger, that arson is about to be committed, or that a riot is about to be committed, and
> (b) There are reasonable grounds to believe that evidence will be obtained essential to the protection of national security, the preservation of human life, or the prevention of arson or a riot, and
> (c) There are no other means readily available for obtaining such information.

RCW 9.73.040(1). This statute has been referred to as the "no consent" statute since the electronic eavesdropping it permits is not limited to situations where one of the participants to the communication or conversation has consented to the eavesdropping. *State v. O'Neill*, 103 Wn.2d 853, 863, 700 P.2d 711 (1985).

At the time RCW 9.73.040 was enacted, the Legislature added RCW 9.73.050[4] which deals with admissibility of

---

[2]Laws of 1909, ch. 249, §§ 410, 411, p. 1021.

[3]Laws of 1967, 1st Ex. Sess., ch. 93, § 2, p. 1821.

[4]Laws of 1967, 1st Ex. Sess., ch. 93, § 3, p. 1822.

intercepted communications into evidence. RCW 9.73.050 states:

> Any information obtained in violation of RCW 9.73.030 or pursuant to any order issued under the provisions of RCW 9.73.040 shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, except . . . in a criminal action in which the defendant is charged with a crime, the commission of which would jeopardize national security.

Under RCW 9.73.090(1) certain emergency response personnel are exempt from the privacy act. For example, the act does not apply to police, fire, emergency medical service, emergency communication centers and poison control centers when they are recording incoming telephone calls. Additionally, police may videotape or record people who are in their custody provided they are informed of such recordings. RCW 9.73.090(1)(a), (b).

Section 2 of RCW 9.73.090, enacted in 1977,[5] is referred to as the "one party consent statute". It allows electronic eavesdropping upon oral communications or conversations when authorized by the court, with the consent of one party to the conversation. *O'Neill,* at 863. RCW 9.73.090(2) provides:

> It shall not be unlawful for a law enforcement officer acting in the performance of the officer's official duties to intercept, record, or disclose an oral communication or conversation where the officer is a party to the communication . . . *Provided,* That prior to the interception, transmission, or recording the officer shall obtain written or telephonic authorization from a judge or magistrate, who shall approve the interception, recording, or disclosure of communications or conversations with a nonconsenting party . . . if there is probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony . . ..

The statute also mandates that an order obtained under this statute be for a reasonable and specified period of time and further authorization may only be granted for an additional period not to exceed 7 days. RCW 9.73.090(4). Additionally, RCW 9.73.120 requires that subsequent reports be

---

[5]Laws of 1977, 1st Ex. Sess., ch. 363, § 3, p. 1675.

filed with the Administrator for the Courts to assure that the system for court ordered electronic surveillance is being properly administrated. *State v. Irwin,* 43 Wn. App. 553, 718 P.2d 826, *review denied,* 106 Wn.2d 1009 (1986).

Each application to a superior court judge, for authorization to record a communication or conversation, shall be in writing upon oath or affirmation and contain detailed information, which includes:

(1) The authority of the applicant to make such application;

(2) The identity and qualifications of the investigative or law enforcement officers or agency for whom the authority to record a communication or conversation is sought and the identity of whoever authorized the application;

(3) A particular statement of the facts relied upon by the applicant to justify his belief that an authorization should be issued, including:

(a) The identity of the particular person, if known, committing the offense and whose communications or conversations are to be recorded;

(b) The details as to the particular offense that has been, is being, or is about to be committed;

(c) The particular type of communication or conversation to be recorded and a showing that there is probable cause to believe such communication will be communicated on the wire communication facility involved or at the particular place where the oral communication is to be recorded;

(d) The character and location of the particular wire communication facilities involved or the particular place where the oral communication is to be recorded;

(e) A statement of the period of time for which the recording is required to be maintained, if the character of the investigation is such that the authorization for recording should not automatically terminate when the described type of communication or conversation has been first obtained, a particular statement of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

(f) A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ;

(4) Where the application is for the renewal or extension of an authorization, a particular statement of facts showing the results thus far obtained from the recording, or a reasonable explanation of the failure to obtain such results;

(5) A complete statement of the facts concerning all previous applications, known to the individual authorizing and to the individual making the application, made to any court for authorization to record a wire or oral communication involving any of the same facilities or places specified in the application or involving any person whose communication is to be intercepted, and the action taken by the court on each application; and

(6) Such additional testimony or documentary evidence in support of the application as the judge may require.

RCW 9.73.130.

*State v. Grant,* 9 Wn. App. 260, 511 P.2d 1013, *review denied,* 83 Wn.2d 1003 (1973), *cert. denied,* 419 U.S. 849 (1974) determined that the privacy act does not apply to excluding the testimony of a police officer who participates in an illegally transmitted or recorded conversation when that officer is unaware of the illegality. In *Grant,* the court explained that "[h]ad [the detective] been a party to the illegal recording and taping, a different question would be presented." *Grant,* at 267. That question is now presented.

In the instant case, the Clark County Sheriff's office failed to obtain the consent of the defendant nor did the department obtain a court order authorizing the use of the body wire. Unlike the situation in *Grant,* the undercover officer was fully aware that he was transmitting the conversation.

▪ *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977) held that the primary purpose of the privacy act is the protection of the privacy of individuals from public dissemination (even in the course of a public trial) of illegally obtained information. *Wanrow,* 88 Wn.2d at 233. We have also held that illegally obtained information would be excluded whether the information was disseminated by introducing the tape recordings or the testimony of the officer who participated in the conversation. *State v. Williams,* 94 Wn.2d 531, 543, 617 P.2d 1012, 24 A.L.R.4th 1191 (1980).

The State argues that RCW 9.73 is strictly limited to the interception or recording of private conversations and does

not limit the testimony as to visual observations or assertive gestures. The State contends that the use of an unauthorized electronic transmission does not subject all the information obtained to the exclusionary rule of RCW 9.73.050. The State suggests that the only matters subject to exclusion are those which were improperly transmitted and recorded.

The defendant argues that the trial court was correct in finding the verbal electronic transmission of the conversations were in violation of the privacy act and that the trial court properly excluded the verbal portions of the conversation between the officer and herself. The defendant contends that the exclusionary rule of RCW 9.73.050 is all encompassing to include any information obtained while using unauthorized electronic broadcasts, including visual observations and assertive conduct. We agree.

Under RCW 9.73.050 the term "[a]ny information" is not defined nor has it been necessary to determine its statutory meaning until now. Whenever we are faced with a question of statutory interpretation we look to the plain meaning of the words used in the statute. A nontechnical statutory term may be given its dictionary meaning. *State v. Olson,* 47 Wn. App. 514, 516–17, 735 P.2d 1362 (1987). Furthermore, statutes should be construed to effect their purpose and unlikely, absurd or strained consequences should be avoided. *State v. Stannard,* 109 Wn.2d 29, 742 P.2d 1244 (1987). Thus, *Webster's II New Riverside University Dictionary* (1984) defines the word "any" as: "the whole amount of: ALL." The same dictionary defines "information" as: "the act of informing or state of being informed, knowledge of a particular event or situation." Since the dictionary meaning of "any" is the whole amount, and the meaning applied to "information" includes the act of informing, we conclude that the term "any information" as used in RCW 9.73.050 includes visual observations as well as assertive gestures.

Here the defendant's conversation was transmitted to other police officers without the defendant's consent or

court authorization and with the full knowledge of the undercover detective. None of the statutory exceptions apply which would render the evidence admissible. The statute plainly states "[a]ny information obtained in violation of RCW 9.73.030 . . . shall be inadmissible in any . . . criminal case". As we read the statute, it expresses a legislative intent to safeguard the private conversations of citizens from dissemination in any way. The statute reflects a desire to protect individuals from the disclosure of any secret illegally uncovered by law enforcement. Since the police acted in violation of RCW 9.73 we must exclude any information obtained by them while they were violating the statute.

We are bound to interpret the proclamations of the Legislature and not create an exception in the law where there is none. RCW 9.73 has no provisions for an undercover police operation to use electronic eavesdropping devices to transmit conversations without first obtaining court authorization, no matter how laudable the reasons. If the supervisors were concerned about officer safety, as they should be, they could have presented an application to a superior court judge as provided in RCW 9.73.090(2). The failure to do so went outside the scope of the State's privacy act which deliberately places the court system between the police and private citizen to protect against this type of intrusion.

We hold that when an officer knowingly transmits a private conversation, without court authorization or without the consent of all the parties, any evidence obtained, including simultaneous visual observation and assertive gestures, is inadmissible in a criminal trial. This decision does not hamstring the goals of law enforcement, but only preserves the integrity of the police and the privacy of individuals.

The statute makes clear provisions for obtaining court authorization based on probable cause requiring an independent review of the facts by a superior court judge. If after reviewing the application, the judge does or does not

issue the order, then the goals and policy of the Legislature are met. However, once the police step outside the boundaries delineated by the law, we have no choice but to make inadmissible any information obtained.

The defendant has raised two other issues on appeal. The first is whether the trial court abused its discretion by not dismissing the charges pursuant to CrR 8.3(b). The second deals with the sufficiency of the evidence to support a conviction for delivery of a controlled substance. These issues are moot because of our holding that any information obtained in violation of the privacy act is inadmissible.

The conviction is reversed.

UTTER, BRACHTENBACH, DOLLIVER, and SMITH, JJ., concur. ANDERSEN, J., concurs in the result.

GUY, J. (dissenting)—While I concur with the majority that all evidence obtained in violation of RCW 9.73.050 must be excluded, I disagree that all evidence obtained once the unauthorized body wire was in use was inadmissible.

Under general principles of statutory construction, when construing a statute the court's purpose is to ascertain and give effect to the intent of the Legislature. *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 509, 730 P.2d 1327 (1986). In effecting legislative intent, this court has held that in the absence of an indication from the Legislature that it intended to overrule the common law, new legislation will be presumed to be in line with prior judicial decisions in a given field of law. *State v. McCullum*, 98 Wn.2d 484, 493, 656 P.2d 1064 (1983). It would therefore be reasonable to assume that absent some legislative intent to the contrary, the privacy act was not intended to abrogate judicial precedent involving common law principles of search and seizure but rather that statute exist harmoniously with that precedent wherever possible.

Exclusion of evidence obtained by reason of the use of an unauthorized body wire extends not only to the contents of

the transmission but to all evidence that may be causally connected to the contents of the transmission. This latter exclusion is contained in the common law body of law on search and seizure, and is known as the "fruit of the poisonous tree" doctrine. Under the majority, any evidence obtained during the use of an unauthorized body wire would be excluded. In taking this position, the majority fails to utilize the common law "fruit of the poisonous tree" doctrine to determine whether all the evidence excluded was causally linked to the use of the unauthorized body wire. Under the majority's position, even sensory observations of police officers or of third parties, having no causal connection to the body wire transmissions, would be inadmissible. Thus, the majority excludes all evidence obtained during the use of the unauthorized body wire without analysis to determine if there is a nexus between the evidence obtained and the use of the body wire. By failing to make such analysis, the majority eliminates the need for the "fruit of the poisonous tree" doctrine. There is no showing of the Legislature's intent to require such a strict application of the exclusionary rule so as to eliminate common law analysis of this doctrine. This court has relied upon the "fruit" doctrine in a variety of cases involving illegal searches and seizures to determine the admissibility of evidence. *See State v. Wethered,* 110 Wn.2d 466, 755 P.2d 797 (1988); *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980); *State v. McFarland,* 84 Wn.2d 391, 526 P.2d 361 (1974), *cert. denied,* 420 U.S. 1005 (1975); *State v. Rothenberger,* 73 Wn.2d 596, 440 P.2d 184 (1968). Although none of these cases involved the privacy act, they signify this court's recognition that the exclusionary rule is not all encompassing and that the "fruit" doctrine has application.

Nothing in the privacy act purports to prohibit the use of the "fruit" doctrine in cases involving the act. *See* RCW 9.73.050. To the contrary, the language of RCW 9.73.050 suggests that the Legislature intended there be a causal nexus between the original illegality and the excluded evidence. RCW 9.73.050 provides in pertinent part:

*Any* information *obtained in violation of* RCW 9.73.030 . . . shall be inadmissible in any civil or criminal case . . ..

(Italics mine.)

The obvious antithesis of this language is that any information not obtained in violation of the statute would be admissible.

RCW 9.73.030(1)(b) provides in pertinent part:

(1) . . . it shall be unlawful for . . . the state of Washington, its agencies, and political subdivisions *to intercept,* or record any:

. . . .

(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation . . . without first obtaining the consent of all the persons engaged in the conversation.

(Italics mine.)

The majority fails to examine the above statutes as a whole and instead focuses solely upon the words "any information" as contained in RCW 9.73.050. This court has held that a statute is construed as a whole, with all its parts being harmonized to give effect to the intent of the Legislature and to avoid inconsistent and absurd results. *Nisqually Delta Ass'n v. DuPont,* 103 Wn.2d 720, 730, 696 P.2d 1222 (1985).

Read together, these statutes exclude from admissibility information obtained in violation of RCW 9.73.030. The statutes do not, however, purport to exclude from trial all information obtained merely because an unauthorized wire was in use at the time. The statutes do not require strict exclusion, rather, exclusion only as to that information obtained in violation of RCW 9.73.030. To determine if information was obtained in violation of the statute, inquiry as to the connection between the use of a wire and the obtaining of the information must be made. The contents of the wire transmission is obviously covered as would be all other "fruit" of the communication. The inquiry in this case, then, is whether information obtained by the police was properly excluded as the "fruit" of the illegal body wire.

The United States Supreme Court has held that the primary question in determining what would be considered "fruit of the poisonous tree" is "'whether . . . the evidence . . . has been come at by exploitation of that illegality or . . . by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States,* 371 U.S. 471, 488, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963) (quoting Maguire, *Evidence of Guilt* 221 (1959)). In that regard, our Court of Appeals has employed a causal nexus analysis holding:

"[E]vidence will not be excluded as 'fruit' unless the illegality is at least the '*but for*' cause of the discovery of the evidence. Suppression is not justified unless 'the challenged evidence is in some sense the product of illegal governmental activity.'"

(Italics mine.) *State v. Aranguren,* 42 Wn. App. 452, 457, 711 P.2d 1096 (1985) (quoting *Segura v. United States,* 468 U.S. 796, 815, 82 L. Ed. 2d 599, 104 S. Ct. 3380 (1984)). In determining whether there is a nexus between the evidence in question and the police conduct, the court essentially makes a commonsense evaluation of the facts and circumstances of the particular case. *Aranguren,* at 457 (citing *United States v. Kapperman,* 764 F.2d 786 (11th Cir. 1985)).

At trial, two sources of evidence were available. One source was Detective Manchester who personally participated in the drug purchase. The other source was the two attending officers who listened to transmissions from the body wire and made personal observations involving the physical conduct of Detective Manchester and the defendant. In analyzing the admissibility of these two sources, it is necessary to determine what evidence was derived through the use of the body wire and what evidence had no causal connection to the use of the wire.

As to the evidence Detective Manchester obtained through conversations with and personal observations of the defendant, there is no causal nexus between that evidence and the use of the body wire, as the detective would have heard the statements and made the observations

regardless of the wire. Similarly, observations of the two attending officers as to the movement of the parties were independent of the body wire and thus not tainted by the unauthorized use of the body wire.

Even though all evidence was derived while Detective Manchester was wearing the wire, thereby establishing a link between the use of the wire and the evidence, this court in *State v. Rothenberger,* 73 Wn.2d 596, 440 P.2d 184 (1968) declared: "Sophisticated argument may prove a causal connection between information obtained through illicit wire–tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint." *Rothenberger,* at 600–01 (quoting *Nardone v. United States,* 308 U.S. 338, 341, 84 L. Ed. 307, 60 S. Ct. 266 (1939)). Such is the case in this instance.

Although enacted after the defendant was charged and therefore not applicable to her case, 1989 additions to RCW 9.73 support the conclusion that the Legislature did not intend that the exclusionary provision of RCW 9.73.050 be all encompassing. RCW 9.73.200 *et seq.* provide for nonjudicial authorization of 1–party–consent wire interception, transmission or recording for the protection of police officers, although not permitting use of the evidence so obtained in trial except with limited exceptions (RCW 9.73.230(8)(a)–(d)).

RCW 9.73.230(8)(d) specifically provides that the subsection is not a bar to the admissibility of testimony of a party or eyewitness to the intercepted, transmitted, or recorded conversation or communication when that testimony is unaided by information obtained solely in violation of RCW 9.73.030. In sum, so long as the police follow RCW 9.73.230 in using a wire tap or body wire for protection of the officer, testimony obtained through the senses of parties or eyewitnesses, unaided by information communicated by use of the nonjudicially approved wire, is admissible.

Deterrence of illegal and improper police conduct should be of paramount concern to this court in protecting and

preserving the rights of individuals. Whenever such unlawful behavior occurs, the evidence derived from such conduct is inadmissible. However, the effect of doing so should not be so all encompassing that the police cannot perform their function in protecting the public. Exclusion of evidence not tainted by the illegality would have no more added deterrent effect to improper police conduct than would disallowing only that evidence which was the "fruit" of the original illegality, as here suggested.

In conclusion, I would affirm the trial court in holding admissible that evidence Detective Manchester derived through conversation with and personal observation of the defendant, as well as all assertive gestures observed or witnessed by the attending officers. To the extent that this dissent conflicts with *State v. Williams*, 94 Wn.2d 531, 617 P.2d 1012, 24 A.L.R.4th 1191 (1980), I would overrule that case.

DORE and DURHAM, JJ., concur with GUY, J.