31 P.3d 28 (2001)
THE COOPER POINT ASSOCIATION, The League of Women Voters of Thurston County, Jolene Unsoeld, Michael Lynch, Tom Mumford, Lea Mitchell, Sylviann Frankus, and Western Washington Growth Management Hearings Board, Respondents,
v.
THURSTON COUNTY, a municipal corporation and political subdivision of the State of Washington, Appellant.
No. 26425-1-II.
Court of Appeals of Washington, Division 2.
September 14, 2001.
*30 Jeffrey George Fancher, Thurston County Deputy Prosecuting Attorney, Olympia, for Appellant.
Marjorie Ann Smitch, Office of Attorney General, Barnett N. Kalikow, Olympia, for Respondents.
Tim Trohimovich, Seattle, for Amicus Curiae 1000 Friends of Washington & Washington Environmental council.
*29 HUNT, A.C.J.
Thurston County appeals a Growth Management Board determination that extending a sewer line from an urban treatment plant to rural Cooper Point violates RCW 36.70A.110(4) of the Growth Management Act (GMA). Holding that the statute is not ambiguous and finding no Board error, we affirm.

FACTS
Cooper Point is a Thurston County peninsula that extends northward from Olympia into Puget Sound. In 1995, the County adopted its Comprehensive Plan in accordance with the GMA. The County designated most of Cooper Point rural, including the area at issue here. The County designated the southern base of Cooper Point an urban growth area (UGA);[1] this UGA is contiguous to the city of Olympia.
Located in the rural area of Cooper Point are two, more densely developed, unincorporated communities, 1,500 feet apart that pre-date the GMATamoshan and Beverly Beach. Beverly Beach comprises 22 homes; Tamoshan comprises 84 homes. Each community has its own small sewage treatment plant, which discharges treated effluent into Puget Sound. Although both treatment plants are aging, they are currently operating effectively, without threatening harm to people or the environment. A number of private shoreline residences on small lots, however, lie outside these two areas served by the treatment plants. Thus far, various on-site solutions have remedied failing septic systems at these individual residences such that they do not pose imminent threats to human health or the marine environment of Puget Sound.[2]
Looking ahead to avoid potential future threats to health and the environment, the *31 County began working with the Cooper Point community in 1992 to develop long-term wastewater solutions.[3] They focused on the Tamoshan and Beverly Beach sewage treatment plants and failing single-family septic systems along the shoreline. On December 20, 1999, the County amended its Comprehensive Plan to include the Cooper Point Wastewater Facilities General Plan (Plan). The Plan addressed non-point pollution[4] and considered five alternatives for Beverly Beach and Tamoshan:
1. Do nothing, keep the status quo;
2. Rebuild the Tamoshan plant and adopt an enhanced on-site septic system operation and maintenance program;
3. Have separate sewer service areas and an enhanced on-site septic system operation and maintenance program;
4. A limited capacity LOTT[5] sewer line and enhanced on-site septic systems operations and maintenance program; and
5. Construct a sewer system to serve all of Cooper Point to be connected [to] the LOTT plant.
Administrative Record (AR) at 527-29, 947.
The County adopted option 4 as its "preferred" alternativeextension of a four-inch sewer line from the urban LOTT plant through the rural area of Cooper Point to Tamoshan and Beverly Beach. This sewer line would also provide potential future hook-ups for up to 100 single-family homes currently on small or individual septic systems. The County did not intend that these hook-ups be made available for new development.
On February 8, 2000, the Cooper Point Association, the League of Women Voters of Thurston County, and several individuals (Association)[6] filed a petition with the Western Washington Growth Management Board (Board). They contended that the Plan violated the State Environmental Policy Act (SEPA) and the GMA. The Board dismissed their SEPA claim. With respect to the GMA claim, however, the Board ruled that the County's Plan did not satisfy RCW 36.70A.110(4) because the County failed to show that the proposed sewer extension was "necessary to protect basic health and safety and the environment."[7] AR at 949-52, 954. The Board ordered the County to abandon its planned extension of sewer service from the treatment plant to Cooper Point.
The County sought review in Thurston County Superior Court. We granted the *32 County's subsequent petition for accelerated review.

ANALYSIS

I. STANDARD OF REVIEW
The Board is charged with adjudicating GMA compliance and, when necessary, invalidating noncompliant comprehensive plans and development regulations. RCW 36.70A.280, .302. The Board "shall find compliance unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of [the GMA]." RCW 36.70A.320(3). To find an action "clearly erroneous," the Board must be "left with the firm and definite conviction that a mistake has been committed." Dep't of Ecology v. Pub. Util. Dist. No. 1, 121 Wash.2d 179, 201, 849 P.2d 646 (1993).
A party aggrieved by a final Board decision may appeal the decision under the Administrative Procedure Act (APA). RCW 36.70A.300(5). Our "judicial review of the Board's decision is based on the record made before the Board." Buechel v. Dep't of Ecology, 125 Wash.2d 196, 202, 884 P.2d 910 (1994). "We apply the standards of RCW 34.05 directly to the record before the agency[.]" City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 45, 959 P.2d 1091 (1998). The burden of demonstrating that the Board erroneously interpreted or applied the law, or that the Board's order is not supported by substantial evidence,[8] remains on the party asserting the errorin this case, the County. RCW 34.05.570(1)(a). We review the Board's legal conclusions de novo, giving substantial weight to the Board's interpretation of the statute it administers. City of Redmond, 136 Wash.2d at 46, 959 P.2d 1091; Diehl v. Mason County, 94 Wash.App. 645, 652, 972 P.2d 543 (1999).
RCW 34.05.570(3) sets forth nine grounds for reversing a Board decision, two of which the County asserts here:
(d) The agency has erroneously interpreted or applied the law;
(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter[.]
While lauding the County's long-range planning efforts to protect public and environmental health, we disagree with its assertion that the Board erred in interpreting and applying the Act as the Legislature mandated.

II. URBAN GOVERNMENTAL SERVICES IN RURAL AREAS
RCW 36.70A.110(4) provides:
In general, cities are the units of local government most appropriate to provide urban governmental services. In general, it is not appropriate that urban governmental services be extended to or expanded in rural areas except in those limited circumstances shown to be necessary to protect basic public health and safety and the environment and when such services are financially supportable at rural densities and do not permit urban development.
(Emphasis added.) The County first argues that RCW 36.70A.110(4) does not apply to its planned sewer line extension to Cooper Point. Alternatively, the County argues that the Board misread the statute.

A. APPLICABILITY
The County contends that the proposed four-inch, limited-capacity sewer line is not an urban public service under the GMA because it is too small to carry urban-level sewage. The County also asserts that the Board inconsistently referred to the sewer line as an "urban service" and a line whose *33 size "virtually excludes any possibility of permitting `urban development.'" AR at 951.
Contrary to the Board's assertion, the GMA's definition of "urban governmental service" expressly "includ[es] storm and sanitary sewer systems[.]" RCW 36.70A.030(19). This statutory definition does not mention sewer pipe size; nor does it exclude small sewer lines. Consistent with inclusion of sewers as "urban governmental services," the GMA specifically provides, "[r]ural services do not include storm or sanitary sewers, except as otherwise authorized by RCW 36.70A.110(4)." RCW 36.70A.030(16) (emphasis added). Under the plain language of these statutes, the County's proposed four-inch sewer line is an urban governmental service.
The County next contends that RCW 36.70A.110(4) does not apply because the sewer line would merely replace current "urban services" facing impending obsolescence; therefore, it is not an "extension" or "expansion" of urban services. On the contrary, the Plan would extend approximately four miles of sewer pipe from an existing urban treatment plant through and to land that the County previously designated rural under its Comprehensive Plan.[9] It would allow for up to 100 new hook-ups by customers currently without sewer service.[10] Clearly, running the sewer line to existing residences not currently served by sewer would be an expansion or extension of new urban services under RCW 36.70A.110(4).
Replacement of the aging sewage treatment plants at Tamoshan and Beverly Beach is somewhat more problematic in that such urban services already exist in these two communities, pre-dating the GMA. Assuming, without so deciding, that replacement of the Tamoshan and Beverly Beach treatment plants were "necessary" (see discussion infra), the County has not shown that extending the LOTT sewer line onto Cooper Point constitutes "replacement" rather than "extension" or "expansion" of urban services. Nor has it shown that such extension is the only way to solve these potential wastewater problems. Rather, the County itself listed five alternatives before choosing the LOTT sewer line extension. The County also considered rebuilding the Tamoshan plant; this alternative would more closely fit the County's notion of "replacing" existing services.

B. "NECESSARY" EXCEPTION
The County asserts that the GMA did not provide for unique anomalies such as the Tamoshan and Beverly Beach "pockets" of dense development surrounded by large, otherwise rural areas. But the County argues that if RCW 36.70A.110 does apply, the proposed sewer line is "necessary" under the subsection(4) exception, thus warranting approval.[11]
The Board analyzed this statute as comprising the following components:
(1) Cities are the most appropriate providers of urban governmental services;

*34 (2) It is generally not appropriate to extend or expand urban governmental services into rural areas;
(3) Limited occasions to extend or expand are allowed that are:
(4) Shown to be necessary to protect:
(a) basic public health and safety and
(b) the environment, but;
(5) Only when the urban governmental services are financially supportable at rural densities; and
(6) Only when extension or expansion does not allow urban development.
AR at 945 (emphasis added). The Board read the statute (which includes the conjunctive "and" between subsections (4)(a) and (b)) to require that both public health/safety and environment subcomponents of component (4) "must be `shown to be necessary to protect' to qualify as an exception against the general prohibition against urban services in rural areas." AR at 946.
The County contends that this reading is overly restrictive. We disagree.
When interpreting statutes, we first look to the plain meaning of words used in the statutes. State v. Fjermestad, 114 Wash.2d 828, 835, 791 P.2d 897 (1990). We may give a nontechnical statutory term its dictionary meaning. Fjermestad, 114 Wash.2d at 835, 791 P.2d 897. If the statutory language is clear and unambiguous, we assume the legislature meant exactly what it said and determine the meaning of the statutes from their language alone. See Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997); C.J.C. v. Corp. of the Catholic Bishop of Yakima, 138 Wash.2d 699, 708, 985 P.2d 262 (1999). City of Lakewood v. Pierce Co., 106 Wash.App. 63, 70, 23 P.3d 1 (2001).
We agree with both parties that the statutory language is unambiguous.[12] We find the statutory language clear on its face and look to the plain meaning of the words alone. "Necessary" means "Absolutely required: INDISPENSABLE" and "Needed to bring about a certain effect or result." WEBSTER'S II NEW COLLEGE DICTIONARY 731 (1999). See also Aponte v. Dep't of Soc. & Health Serv., 92 Wash.App. 604, 618, 965 P.2d 626 (1998).
This plain language of the statute reflects the Legislature's overall goals and policies for the GMA: to reduce sprawl and to reduce "the inappropriate conversion of undeveloped land into sprawling, low-density development;"[13] to "protect the rural character" of an area;[14] and to bar extension or expansion of urban governmental services into designated rural areas. RCW 36.70A.110(4). The Washington Supreme Court's recently acknowledged these broad policy goals in King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 138 Wash.2d 161, 166, 979 P.2d 374 (1999), noting, "The Legislature adopted the [GMA] to control urban sprawl."
The initial premise of RCW 36.70A.110(4) is that, generally, urban governmental services should not be extended or expanded into rural areas. But the Legislature has carved out an exception (1) where such an extension or expansion[15] is necessary to protect public health and safety and the environment, and (2) where such services "are financially supportable at rural densities and do not permit urban development."[16]
At issue here is the County's plan to extend urban sewer service to two communities with aging, though operational, sewer plants and, potentially, to 100 additional homes in a *35 rural area. According to the record, the existing sewage treatment plant and homes served by septic systems are not currently experiencing waste discharge problems that threaten public health or the environment. Rather, the County wants to extend sewer service because the treatment plants and residences might experience septic problems in the future.
But the County has not shown that there are present wastewater problems that threaten health, safety, and the environment either now or in the near future. Thus, the County has not established that the proposed sewer line extension is "necessary." The County has failed to satisfy the statutory exception to the Legislature's general prohibition of extending urban services into rural areas.
Consistent with the plain language of the statute and King County, the Board here noted:
The Legislature has recognized that intrusion or extension of urban services to rural areas inevitably creates pressure to urbanize. That is the reason that the strict `necessary to protect' test was adopted rather than a `betterment of health or environment' standard.
AR at 952 (emphasis added). Moreover, the record before the Board suggested that the push for further development or a future reclassification of Cooper Point from rural to urban growth area would be likely, if not inevitable, if the County were to expand the sewer according to its extension Plan.[17]
Neither the Board's ruling nor our reading of the statute prevents the County from responsible, long-range planning to address unique community needs and to protect the environment. Rather, the Board's ruling simply requires that such plans comply with the Legislature's statutory mandate.[18] And we concur.

III. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S DECISION
Under the APA, we must uphold the Board's reading and application of the statute if substantial evidence supports it.[19] RCW 36.05.570(3)(e). We neither weigh credibility of witnesses nor substitute our judgment for that of the agency. Nguyen v. Dep't of Health, Med. Quality Assurance Comm'n, 99 Wash.App. 96, 101, 994 P.2d 216 (1999) (citing US West Communications, Inc. v. Wash. Utils. & Transp. Comm'n, 134 Wash.2d 48, 62, 949 P.2d 1321 (1997)).
The evidence supports the Board's finding that the County's Plan calls for extending a sewer pipe from an urban treatment plant into a rural area. The evidence also supports the Board's conclusion that the extension is not "necessary" and, thus, does not fall within the statutory exception to the general prohibition against extending urban services into rural areas. The County's Plan addressed two distinct problems on the Cooper Point peninsula: (1) the Tamoshan and Beverly Beach communities and their respective, aging (but not failing) sewage treatment plants; and (2) 882 individual septic systems serving about 950 residences that have no *36 other sewage treatment systems. The record supports the Board's factual determination regarding each aspect of the Plan.
First, the County has admitted that the aging treatment plants are neither currently nor in imminent danger of failing to protect the environment. The County has not, therefore, shown that extension of a sewer pipe to hook up these communities to the urban LOTT plant is necessary to protect the environment, no matter how desirable or sensible. Second, the County admits that the public health and environment can be protected by on-site repairs of individual septic systems; its own Plan notes that such repairs have already proven successful.[20] Again, the County admits that extension of a LOTT sewer pipe into this designated rural area, although arguably prudent, is not absolutely required, e.g. "necessary," to protect basic public health, safety, or the environment.
Accordingly, we find substantial evidence in the record to justify the Board's finding.

IV. NO DEFERENCE OWED TO THE COUNTY PLAN
Finally, the County argues that the Board erred in not according deference to its Plan. While the County is correct that RCW 36.70A.320(1) requires "boards to grant deference to counties" in their development plans, such deference is not unbounded. The GMA itself limits a county's discretion. As our State Supreme Court recently stated,
"Local governments have broad discretion in developing [comprehensive plans] and [development regulations] tailored to local circumstances." Diehl, 94 Wash.App. at 651, 972 P.2d 543. Local discretion is bounded, however, by the goals and requirements of the GMA. In reviewing the planning decisions of local governments, the Board is instructed to recognize "the broad range of discretion that may be exercised by counties and cities consistent with the requirements of this chapter" and to "grant deference to counties and cities in how they plan for growth, consistent with the requirements and goals of this chapter." RCW 36.70A.3201 (emphasis added).
King County v. Cent. Puget Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 561, 14 P.3d 133 (2000).
Consistent with King County,[21] and notwithstanding the "deference" language of RCW 36.70A.3201, the Board acts properly when it foregoes deference to a county's plan that is not "consistent with the requirements and goals" of the GMA. Here, the County's Plan, though well-intentioned, failed to meet the "necessity" requirement of RCW 36.70A.110(4). Moreover, the sewer extension's potential for inviting future urban sprawl contravenes an essential GMA goal of reducing urban growth into rural areas. See RCW 36.70A.020(2), .070(5)(c)(i), (iii). The Legislature's will overrides any deference to a county's plan that conflicts with the GMA. Here, the County's planned LOTT sewer extension conflicts not only with the GMA, but also with the County's own Comprehensive Plan. The County designated the Cooper Point peninsula "rural" under its Comprehensive Plan. The County may not now compromise either its own rural designations or the GMA's mandate to maintain rural areas without showing that extending urban services is "necessary" under RCW 36.70A.110(4). This the County failed to do; consequently, the Board owed it no deference.
Affirmed.
MORGAN, and QUINN-BRINTNALL, JJ., concur.
NOTES
[1] RCW 36.70A.110(1) provides, in pertinent part:

Each county that is required or chooses to plan under RCW 36.70A.040 shall designate an urban growth area or areas within which urban growth shall be encouraged and outside of which growth can occur only if it is not urban in nature.
Under this statute, the County could have designated the Cooper Point area in question as an urban growth area in its Comprehensive Plan. But it did not. Instead, the County designated everything north of the southern end of Cooper Point (including the area at issue here) as rural.
[2] As the Plan itself notes: "Nearly all of the 96 septic system failures identified in the 1990's surveys have been repaired ... and the previous restrictions on commercial shellfish harvesting were lifted." Administrative Record (AR) at 831.
[3] The primary problems were the failing septic systems and the two sewage treatment plants. Regarding the individual lot septic system problems, the County elaborated as follows: (1) soils on Cooper Point peninsula drain poorly, with many homes on small lots near the shoreline where steep slopes are common; (2) the ability to expand/repair existing septic systems is limited and perhaps cost prohibitive under current guidelines; and (3) it is possible there will be unreported effluent from failing systems because owners lack cost-effective options.
[4] RCW 70.146.020(8) provides,

"Nonpoint source water pollution" means pollution that enters any waters of the state from any dispersed water-based or land-use activities, including, but not limited to, atmospheric deposition, surface water runoff from agricultural lands, urban areas, and forest lands, subsurface or underground sources, and discharges from boats or other marine vessels.
A "point source" is defined as
any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged.
33 U.S.C. § 1362(14). See also Miotke v. City of Spokane, 101 Wash.2d 307, 323, 678 P.2d 803 (1984).
[5] LOTT refers to the Lacey, Olympia, Tumwater (sewage) Treatment plant.
[6] "Association" refers to the plaintiffs collectively, not to the Tamoshan Homeowners Association, which is not a party to this action.
[7] Even the Tamoshan Homeowners Association, which originally supported the pipe extension plan, acknowledges that the upgrade or replacement of the current treatment system can be done "in an environmentally sound manner, and at a cost substantially less than the [extended urban] sewer line costs outlined in the draft [Plan] report." AR at 842 (emphasis added). The County admits that the aging plants are not currently a threat to the environment. Rather, it is attempting to plan ahead to forestall future threats.
[8] In reviewing the agency's findings of fact under RCW 34.05.570(3)(e), the test of substantial evidence is "a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order." Callecod v. Wash. State Patrol, 84 Wash.App. 663, 673, 929 P.2d 510 (1997); King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 552-53, 14 P.3d 133 (2000).
[9] The existence of the Tamoshan and Beverly Beach developments, including their small sewage treatment plants, does not change the fact that the Cooper Point area through which the pipe would pass is designated "rural" and currently has no such services passing through it.
[10] Although the County intends to confine hook-ups to residences with failing septic systems, the Association fears that ultimately the line would be made available for, and thus encourage, new development in this rural area.
[11] The County adds that because the aging treatment plants discharge into the Puget Sound, the State Department of Ecology (DOE) agrees that the County's "preferred alternative" under the Plan, i.e. the sewer line extension, would best handle the unique situation on Cooper Point. The County further notes that the State Department of Community, Trade, and Economic Development (CTED) found the "preferred alternative" appropriate within the Plan's limitations.

Even assuming that the proposed sewer line extension might be the optimum solution for the Puget Sound marine environment, for example, such conclusion would not answer the GMA issue before usthe Legislature's goal of preventing urban sprawl by preventing expansion of urban infrastructure into rural areas. Moreover, the Legislature gave the Board, not the DOE or CTED, quasi-judicial authority to review a county's comprehensive plan and to determine if it complies with the GMA. What the DOE, CTED, or County think best is neither pertinent to what the Legislature considered "necessary" under the GMA nor proof of necessity.
[12] Nonetheless, we recognize that the parties disagree as to what that unambiguous meaning is.
[13] RCW 36.70A.020(2)
[14] See RCW 36.70A.070(5)(c)(i), (iii).
[15] Laying a four-inch sewer pipe qualifies as an "urban governmental service," which the GMA defines as "specifically including storm and sanitary sewer systems[.]" RCW 36.70A.030(19). Moreover, the GMA definition of "rural governmental services" specifically states, "[r]ural services do not include storm or sanitary sewers, except as otherwise authorized by RCW 36.70A.110(4)." RCW 36.70A.030(16) (emphasis added).
[16] Opponents argue that the cost of the sewer extension will create pressure for further development to share the cost. See Tamoshan Association letter, AR at 841-42. The Board, however, found that the Plan could be financially supportable at rural densities.
[17] For example, a letter from the Tamoshan Homeowners Association to the County Department of Water and Waste Management states that while the Association had originally supported extension of the sewer pipe from the LOTT station, it could no longer support the Plan because the Tamoshan and Beverly Beach residents could not shoulder the cost alone or disproportionately. The inference is that if the sewer line project proceeded, steady public pressure would mount on later County Commissioners to add more residences to the line to help defray costs. The Cooper Point Association noted that this sort of pressure could foreseeably lead future Commissioners to look to areas "already sewered" when designating new UGAs.
[18] The GMA requires counties to adopt plans that conform to the Legislature's objective to prevent extending "urban governmental services" into rural communities. The County did this when it adopted its Comprehensive Plan. But in essence, the County asks us to fashion an exception to its Comprehensive Plan in order to accommodate the proposed LOTT sewer line extension onto Cooper Point. We decline the County's implicit invitation to fashion judicially what is a county or state legislative remedy.
[19] In reviewing challenged findings under RCW 34.05.570(3)(e), we look to see whether there is a sufficient quantity of evidence to persuade a fairminded person of the truth or correctness of the order. City of Redmond, 136 Wash.2d at 46, 959 P.2d 1091.
[20] The County admits that nearly all failed systems have been "corrected through repairs accepted by the County Department of Environmental Health." AR at 480; see also AR at 831.
[21] King County addressed essentially the same argument Thurston County makes here. There, the Court held,

After properly designating agricultural lands in [its Plan], the County may not then undermine the Act's agricultural conservation mandate by adopting "innovative" amendments that allow the conversion of ... agricultural soils to an unrelated use.
142 Wash.2d at 561, 14 P.3d 133.