FILED
COURT OF APPEALS
DIVISION II

2015 APR 21 AM 9: 03

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45531-5-II |
| Appellant, | (Consolidated with No. 45536-6-II) |
| v. | |
| MICHAEL DUANE ELMORE; RYAN MICHAEL O'BRIEN, | |
| Respondents, | |
| and | |
| JAMIE MARIE GONDER; KASSANDRA CHAMBERS; NICHOLAS WOODY, | UNPUBLISHED OPINION |
| Defendants. | |

LEE, J. — The State appeals the trial court's order granting Ryan O'Brien's and Michael

Elmore's motion to suppress evidence based on a violation of Washington's privacy act, chapter

No. 45531-5-II
No. 45536-6-II

9.73 RCW.[1]  Because officers knowingly recorded an encounter with O'Brien without judicial authorization, we affirm.

FACTS

The State charged O'Brien with two counts of first degree trafficking in stolen property, two counts of unlawful possession of a stolen vehicle, and three counts of first degree taking a motor vehicle without permission.  The State charged Elmore with three counts of first degree taking a motor vehicle without permission, three counts of theft of a motor vehicle, and three counts of first degree trafficking in stolen property.  The trial court consolidated O'Brien's case and Elmore's case for trial.

---

[1] Washington's privacy act, provides,

> (1) [I]t shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:
>
> (a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;
>
> (b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

RCW 9.73.030.

No. 45531-5-II
No. 45536-6-II

O'Brien and Elmore[2] brought a CrR 3.6 motion to suppress information obtained from officers recording an encounter with Nicholas Woody[3] and O'Brien on January 22, 2013, alleging that the recording violated chapter 9.73 RCW.[4] At the CrR 3.6 suppression hearing, Detective Shaun Darby testified to the following background and events.

In 2012, various Washington law enforcement agencies formed a task force to address the trafficking of stolen cars. The task force conducted an undercover sting operation—nicknamed "Operation Shiny Penny"—out of a storefront ("the store") in Tacoma, WA. Report of Proceedings (RP) (Oct. 31, 2013) at 12. Officers met with people at the store by appointment only.

Officers made an appointment to meet with known stolen car traffickers, Harrie Chan and Samnang Reuy,[5] on January 22, 2013. In preparation for the meeting, officers obtained judicial authorization to record the officers' meeting with Chan and Reuy. The authorization stated that officers could "intercept, transmit, and record by any device or instrument the communication and conversations between [police officers] and [Reuy] and [Chan]; and those inadvertently present." Ex. 4 at 2. According to the officers' plan, Detective DuCummon would wear a recording device on his person during the meeting with Chan.

---

[2] O'Brien originally brought the CrR 3.6 motion and Elmore joined in it.

[3] Woody is not a party to this appeal.

[4] The information gathered from the recorded January 22 encounter led to charges against respondent Elmore.

[5] Chan and Reuy are not parties to this appeal.

On January 22, officers were at the store preparing for the arranged meeting with Chan. At around noon, Woody arrived at the store unannounced. Woody was familiar with the store because he had previously accompanied another seller of stolen goods to the store. Woody told the officers that he had a stolen car that he wished to sell. An agreement on a price for the car was reached and Woody told the officers that he would return with the car to complete the sale in approximately thirty minutes.

After Woody left, Detective DuCummon activated the recording device that he was wearing in preparation for Chan's arrival. After activating the recording device, but before Chan arrived, Woody returned with a stolen car, accompanied by O'Brien. Woody sold the stolen car to the officers, and he and O'Brien left the store. As Woody and O'Brien drove off, Chan arrived. Both the meeting with Woody and O'Brien and the meeting with Chan were recorded. After the meeting with Chan concluded, the officers recognized that Woody and O'Brien "were inadvertently recorded while we were attempting to record conversations with Harr[y] Chan." RP (Oct. 31, 2013) at 33. Recognizing that Woody and O'Brien were "inadvertently recorded," officers sealed the recording and placed it in a secure evidence storage. RP (Oct. 31, 2013) at 33. Officers did not listen to the recording, and neither the State nor the defense accessed it during discovery in this case. The information learned during the recorded January 22 encounter with Woody and O'Brien led officers to Elmore.

The trial court granted the respondents' motion to suppress evidence, finding that the officers violated chapter 9.73 RCW by "recording the conversation on [January 22] of Woody and

4

No. 45531-5-II
No. 45536-6-II

O'Brien." RP (Nov. 4, 2013) at 19. After the evidence was suppressed, O'Brien and Elmore moved to dismiss the charges because the State did not have evidence or information obtained independently of the recorded January 22 encounter with Woody and O'Brien to support its case. The trial court granted the motion to dismiss, and entered findings of fact and conclusions of law on the CrR 3.6 hearing. The State appeals.[6]

ANALYSIS

When reviewing the trial court's grant of a CrR 3.6 suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether those findings of fact support the challenged conclusions of law.[7] *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Unchallenged findings of fact are considered verities on appeal. *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). We review de novo the trial court's conclusions of law regarding evidence suppression. *Garvin*, 166 Wn.2d at 249.

---

[6] On January 7, 2014, this court granted the State's motion to consolidate the appeals of O'Brien's case and Elmore's case.

[7] Respondents do not cross-appeal and they purport to not seek affirmative relief. However, they challenge the trial court's findings of fact 14 and 17. Brief of respondent (Elmore) at 2 states, "Except for the State's reliance on certain findings of fact challenged by [respondents] (as discussed below), [respondents] accept[] the recitations of the facts set forth in the State's Opening Brief of Appellant at 4-9."

To the extent that O'Brien and Elmore seek for us to hold that the challenged findings are error, we do not consider the arguments because they seek affirmative relief without cross-appealing. *State v. Kindsvogel*, 149 Wn.2d 477, 481, 69 P.3d 870 (2003); RAP 10.3.

However, to the extent that O'Brien and Elmore ask us not to rely on the challenged findings as verities on appeal, we note that the disputed findings do not affect the analysis at issue before us.

5

No. 45531-5-II
No. 45536-6-II

The State assigns error to three "CONCLUSIONS AS TO ADMISSIBILITY":

1. RCW 9.73.050 governs admissibility of intercepted communications into evidence in a criminal proceeding, and states as follows:

> Any information obtained in violation of RCW 9.73.030 or pursuant to any order issued under the provisions of RCW 9.73.040 shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, except with the permission of the person whose rights have been violated in an action brought for damages under the provisions of RCW 9.73.030 through 9.73.080, or in a criminal action in which the defendant is charged with a crime, the commission of which would jeopardize national security.

This act was violated by the act of the officer's recording of [sic] ELMORE and OBRIEN. Because there is not a "good faith" exception, on the part of the officers in this case, to the prohibition on admissibility of evidence obtained in violation of the privacy act, the evidence of the recording, including the officers observations and communications with the defendants, and all evidence subsequently obtained as a result of the unlawful recording of the defendants, is hereby suppressed.

. . . .

2. All audio and visual evidence obtained by the unlawful interception of recording must be suppressed because of the Privacy Act violation.

3. Additionally, any testimony regarding verbal communications, observations and mannerisms of the defendants must also be suppressed.

Suppl. CP (O'Brien) at 56. The State argues that the trial court erred by ruling that the recording of the January 22 encounter with O'Brien violated chapter 9.73 RCW, and thereby erred by suppressing the evidence and information obtained during that encounter. In support of its argument, the State claims that the officers had judicial authorization to record, and that O'Brien "made himself inadvertently present." Br. of Appellant at 1. Because the officers did not have

6

judicial authorization to record the January 22, 2013 encounter with Woody and O'Brien, the recording violated chapter 9.73 RCW, and we affirm.

RCW 9.73.030 prohibits the recording of private conversations without the parties' consent. RCW 9.73.090(2) provides an exception to the requirement of consent where officers obtain prior judicial authorization based on probable cause.[8] But, "when an officer knowingly transmits a private conversation, without court authorization or without the consent of all the parties, any evidence obtained, including simultaneous visual observation and assertive gestures, is inadmissible in a criminal trial." *State v. Fjermestad*, 114 Wn.2d 828, 836, 791 P.2d 897, (1990); RCW 9.73.050. "[O]nce the police step outside the boundaries delineated by the law, we have no choice but to make inadmissible any information obtained." *Fjermestad*, 114 Wn.2d at 837.

Here, there was no judicial authorization for the recording of the officers' January 22 encounter with Woody and O'Brien. The evidence shows that even the officers themselves knew

---

[8] RCW 9.73.090(2) is as follows:

> It shall not be unlawful for a law enforcement officer acting in the performance of the officer's official duties to intercept, record, or disclose an oral communication or conversation where the officer is a party to the communication or conversation or one of the parties to the communication or conversation has given prior consent to the interception, recording, or disclosure: PROVIDED, That *prior to the interception, transmission, or recording* the officer shall obtain written or telephonic authorization from a judge or magistrate, who shall approve the interception, recording, or disclosure of communications or conversations with a nonconsenting party for a reasonable and specified period of time, if there is probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony.

(Emphasis added).

they did not have any authority or authorization to record the January 22 encounter with Woody and O'Brien. Darby testified that unless the person who was the subject of the judicial authorization order was present during the recording, it "would be a recording outside the order." RP (Oct. 31, 2013) at 50. Chan and Reuy were the subject of the judicial authorization order. Neither Chan nor Reuy were present when the encounter with Woody and O'Brien was recorded. Thus, the January 22 encounter with Woody and O'Brien was recorded without judicial authorization as required by chapter 9.73 RCW.

Also, the unchallenged findings support the trial court's conclusion that the recording of the January 22 encounter with Woody and O'Brien violated chapter 9.73 RCW. Finding of fact 15 states that "[r]egarding a separate suspect [Chan] . . . officers had received judicial approval for a hidden wire to be worn." Suppl. CP (O'Brien) at 53. Finding of fact 22 states that "officers then conducted business with WOODY and OBRIEN and the conversations between them and the officers was apparently recorded"; and finding of fact 26 states that "officers recognized they had potentially recorded conversations between WOODY and OBRIEN without prior judicial approval." Suppl. CP (O'Brien) at 54. The testimony and the unchallenged findings support the conclusion that there was no judicial authorization for the recording of the officers' January 22 encounter with Woody and O'Brien.

The State argues that the judicial authorization to record the encounter with Chan permitted officers to record the encounter with Woody and O'Brien because they were "inadvertently present." However, Darby testified that Chan was not present when Woody and O'Brien were at

8

the store. Moreover, the State has presented no authority to support its position that judicial authorization to record the encounter with Chan extends authorization to record an unrelated encounter with Woody and O'Brien at a different time when Chan was not present. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). The officers did not have authorization to record the January 22 encounter with Woody and O'Brien.

Also, the State argues that Woody and O'Brien were "inadvertently present" because officers did not expect them at the store, the unchallenged findings and the testimony do not support the State's argument. The trial court's findings of fact state: "The undercover officers made an appointment with Woody to return with vehicles" and "officers knew [Woody] was coming to the storefront to sell them vehicles and had made an appointment with him to do so." Suppl. CP (O'Brien) at 52-53. Further, Darby testified that officers "agreed that [Woody] could bring the cars that he wanted to sell" and that Woody told the officers "that he would be back in approximately 30 minutes" with the cars. RP (Oct. 31, 2013) at 28. Thus, the testimony and the unchallenged findings do not support the argument that Woody and O'Brien were "inadvertently present" because the officers did expect Woody at the store.

The State also argues that "[w]hile it is true that officers apparently recorded their conversation with Woody and O'Brien, it is equally true that they had no intention of doing so." Br. of Appellant at 15. Effectively, the State argues that the officers did not need judicial

authorization to record the encounter with Woody and O'Brien, because even though officers permitted Woody to return while expecting Chan, an unrelated party, to arrive, they activated the recording device on January 22, 2013 to record Chan—not Woody and O'Brien. The State has presented no authority to support its position that officers are excused from obtaining judicial authorization because they did not intend to record the encounter. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer*, 60 Wn.2d at 126.

*Fjermestad* held that "RCW 9.73 has no provisions for an undercover police operation to use electronic eavesdropping devices to transmit conversations without first obtaining court authorization, no matter how laudable the reasons." 114 Wn.2d at 836. Because the officers failed to obtain judicial authorization, the recording of the January 22, 2013 encounter with Woody and O'Brien violated chapter 9.73 RCW. *See* 114 Wn.2d at 836-37. Therefore, RCW 9.73.050 bars the information obtained from and during that wrongfully recorded encounter. 114 Wn.2d at 836-37.

We hold that the officers' unauthorized recording of the January 22, 2013 encounter with Woody and O'Brien violated chapter 9.73 RCW, and thus, any information obtained from the recorded encounter is inadmissible. *State v. Salinas*, 121 Wn.2d 689, 697, 853 P.2d 439, (1993) (holding that under *Fjermestad*, the RCW 9.73.050 prohibition "includes all information obtained during the time [the officer] was wearing the body wire, whether or not that information was

No. 45531-5-II
No. 45536-6-II

obtained through the aid of the body wire"). Accordingly, we affirm the trial court's ruling granting the respondents' motion to suppress.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Sutton, J.

11