IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>    v.<br><br>JUNJIE GONG,<br><br>     Appellant. | No. 83305-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Junjie Gong appeals his conviction for one count of attempted rape of a child in the second degree and one felony count of communication with a minor for immoral purposes. He contends that the Privacy Act should have barred the admission of his statements, that the trial court failed to provide a necessary unanimity instruction, and that the prosecutor engaged in several acts of misconduct. Finally, Gong claims that the State violated his right to due process by failing to preserve exculpatory evidence when it did not retain an adult website pop-up notice. Gong fails to establish any basis for relief. We affirm.

FACTS

In July 2018, the Washington State Patrol (WSP) conducted "Operation Net Nanny," an undercover investigation into child exploitation. The WSP had a human trafficking unit that partnered with Homeland Security. The operation

Citations and pin cites are based on the Westlaw online version of the cited material.

involved local and federal detectives. WSP detective sergeant Daniel McDonald created a fake profile on Adultlook.com, an escort website. McDonald posed as "Kacityler," age 18, stating that she was "ready to have some fun" and "younger than you think."

Late in the evening on July 27, Gong text messaged the phone number McDonald posted for Kaci on Adultlook.com. Gong messaged that he found the number from a website and asked if she was "kacityler." McDonald confirmed Gong was messaging kacityler, who we will refer to as Kaci to depict when McDonald was responding in character. Gong asked Kaci if she lived in Tacoma, had "time tonight," and how much she charged. After Gong asked for her address and said he could drive, Kaci text messaged "tbh[1] im 13 and trying to find a older guy. i understand if im to young but boys my age suck. im free if ur ok iwth that." Gong responded, "what," "is that a crime?" and "well, at least we can meet." Gong asked Kaci if she was a cop. Kaci responded, "im 13! I cant be a cop dummy." Gong asked Kaci "how much do you need" and if she was able to talk. Kaci responded "yes but only if ur serious about hooking up and teaching me." Gong asked for her address and said "I understand my action is putting me in a jail[.]"

McDonald sent Gong a photo of Kaci. The photo depicted another undercover officer, WSP trooper Anna Gasser, with digital filters that applied bear ears and glasses on her face to make her look younger. Gong refused Kaci's request to send a selfie so as not to "self evidence myself". Gong

---

[1] Common acronym for "to be honest," as testified to by McDonald.

messaged, "i may can help you," and "i must be lost my mind today" "guilty" and asked Kaci to "tell me i am guilty." Gong asked Kaci if he needed to "book a room." Kaci told Gong he could come over since she was home alone. Gong agreed to Kaci's request to bring condoms, lubricant, and a cherry Slurpee from 7-Eleven.

As their text messages continued before Gong arrived, Kaci told Gong she did not have a lot of experience and asked what Gong could teach her. Gong replied "the history and science" "about make sex". Gong asked to speak with Kaci over the phone.

Gasser pretended to be Kaci over the phone and in person. During the short unrecorded phone call between Gong and Gasser, Gong asked Kaci what she wanted to learn, and Gasser told him she wanted to experience sex. Gong said he would be "proficient enough" at having sex and there were a lot of things he had to teach her. He said he would help her learn by experience. He agreed to bring condoms, and he didn't want her to be a "young mom" and that she "might hurt a little bit." Gong also told her that hygiene was very important and he did not want to be "like two pigs fucking."

Gong was given an address to an undercover target house, where law enforcement set up video cameras. While Gasser greeted Gong, federal agents in another room at the house controlled the video equipment.

Gong arrived at the undercover target house at about one o'clock in the morning. When Gasser answered the door, Gong handed her the Slurpee and told her he brought the condoms.

3

Unbeknownst to Gasser, the agents started audio recording three seconds too soon, capturing a short interaction between Gong and Gasser before the arrest team entered. Gong asked Gasser how old she was and she told him 13 and he asked "really?" Trooper Gasser testified that Gong looked "shocked" and stepped back "as if I looked older than 13." Trooper Gasser told him "yeah" and then said she was going to warm up the shower. As Gong followed her toward the bathroom, the arrest team came in and announced to Gong that he was under arrest and being recorded and then took Gong into custody. Gasser testified at trial about her personal interactions with Gong. The audio recording of their conversation was never played for the jury or admitted into evidence.

Detective John Garden interviewed Gong after his arrest. Gong told Garden that he was an immigrant, having arrived in the United States eight years ago, and was currently serving in the army. Gong told the detective that "curiosity" brought him to the house to meet Kaci. He said he continued to talk to Kaci after she said she was 13 because she was the only one who responded to him. When the detective asked Gong about bringing a condom, Gong said there was a "50 percent chance" that he would have had sex with Kaci. Gong expressed that he knew having sex with someone under 16 was illegal and clarified he intended to have sex with the 13-year-old girl "only if she agreed."

Gong was charged with one count of attempted rape of a child in the second degree and one count of communication with a minor for immoral purposes. A jury found Gong guilty on both charges. The trial judge sentenced Gong to an indeterminate sentence of 76.5 months to life in prison for the

4

attempted rape in the second degree concurrent to the nine months imposed for communication with a minor for immoral purposes.  Gong appeals.

DISCUSSION

Privacy Act

Gong argues the court erred by allowing Gasser to testify about the conversation she had with Gong at the target house because the conversation was unlawfully recorded in violation of the Privacy Act.  The State responds that because Gong never objected to Trooper Gasser's testimony, this appeal is more properly framed as a challenge to the court's denial of Gong's motion for mistrial.  Based on the record, we agree with the State.  Though the conversation between Gasser and Gong may have been improperly recorded, Gong mischaracterizes the trial court's actions and misunderstands what this court will review on appeal.

Gong claims that Gasser was permitted to testify over his objection.  This is incorrect.  At the time she was called to testify, Gong did not object to Gasser testifying, nor to her statements about her in-person conversation with Gong.

In fact, when defense counsel cross-examined Gasser, counsel himself directly asked her about the recording in front of the jury:

> [Defense counsel] All right. The portion or the thing we're talking about where Mr. Gong shows up at the residence and asks you how old you are, now, [the prosecutor] was asking you a lot of questions about [Gong's] inflection and things like that, but the fact is is [sic] that your memory is not really all that necessary, right, because this was recorded, wasn't it?
>
> [Trooper Gasser] It was.
>
> [Defense counsel] Okay.  So if we want to hear what the inflection was, the best evidence out there is probably just going to be hear the recording, isn't it?

[Trooper Gasser] Yes.

Outside the presence of the jury, the State addressed defense counsel referencing the recording in front of the jury. The State explained it believed this audio recording was inadmissible under the Privacy Act. The prosecutor stated,

> [T]he defense has mentioned inadmissible evidence in front of this jury in an attempt to suggest the State is hiding information from them . . . . [Defense counsel] either knows or should know that the audio interchange between Mr. Gong and Anna Gasser at the door of that trap house is inadmissible as a matter of law under the Privacy Act. The reason for that is, there was no announcement beforehand that it was being audio and video recorded.
>
> . . . .
>
> He's now told the jury there's an audio exchange the State did not play for them at the door.

To remedy the defense's actions, the State requested that the court tell the jury the audio recording did not exist for the purposes of the trial, or alternatively, that the defense elect to play the audio.

In response, defense counsel told the court he assumed the recording would be played stating, "Well, we've never had a problem with it being played, so we want it to be played." Defense counsel also suggested that if the recording really was inadmissible, no testimony would be permitted regarding the recording. The prosecutor disagreed:

> [A] violation of the Privacy Act prevents the witness from using that evidence to prepare for testimony. It's just a flat lie that it means they can't testify at all and we have a mistrial.
> I will represent to you that Detective Gasser will testify under oath that her testimony was not refreshed with any audio from the recording and that she testified from her memory and from her written report.

6

The court asked both parties to provide additional authority on the issue.

Four days later, defense agreed with the State that the audio recording of Gong and Gasser presented a Privacy Act violation. Defense counsel asked the court to (1) dismiss the case for government misconduct under CrR 8.3(b)[2] for the State eliciting testimony that was the substance of the unlawful recording, (2) declare a mistrial, or (3) instruct the jury not to consider any statements made by Gong to Gasser after he entered the target house.

The State asked the court to deny Gong's requests and issue a jury instruction not to consider the defense referencing the audio recording. Gong objected to the court issuing a limiting instruction.

The court denied Gong's request for dismissal or mistrial and granted the State's request for a limiting instruction, which was read to the jury:

> Last week during the testimony of Detective Anna Gasser, there were questions asked about a recording of an exchange between Detective Gasser and Mr. Gong at the door regarding or relating to age. That was a subject that I should not have allowed. You are to entirely disregard the question and the answer given at this time. You are instructed that there is no audio recording between Mr. Gong and Detective Gasser that is or will be in evidence at this trial.

As Gong did not timely object to the testimony of Gasser at trial, we will not review this claim of error raised for the first time on appeal. See RAP 2.5(a) ("the appellate court may refuse to review any claim of error which was not raised in the trial court."). However, to the extent Gong challenges the trial court's rejection of his motion for mistrial or proposed instruction to the jury to disregard

_____

[2] Criminal Rule 8.3(b) provides that the "court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."

7

Gasser's testimony about what Gong said to her after entering the target house, we review his Privacy Act claim on that basis.

We review a trial court's rulings on motion for mistrial and admissibility of testimonial evidence for abuse of discretion. State v. Gamble, 168 Wn.2d 161, 177, 225 P.3d 973 (2010); State v. Aguirre, 168 Wn.2d 350, 361, 229 P.3d 669 (2010).

Washington's Privacy Act prohibits the recording of private communications without the consent of all participants. RCW 9.73.030(1). Consent may be obtained by announcing to all parties that the conversation will be recorded, so long as the announcement is itself recorded. RCW 9.73.030(3). RCW 9.73.050 further provides that information obtained in violation of RCW 9.73.030 is inadmissible as evidence in Washington courts. Where a trial court improperly admits information obtained in violation of the Privacy Act statute, an appellate court must determine whether the error was so prejudicial as to materially affect the outcome of the trial. State v. Rupe, 101 Wn.2d 664, 682, 683 P.2d 571 (1984).

The State conceded at trial that the brief conversation between Gasser and Gong at the target house was unlawfully recorded according to RCW 9.73.[3] But the State argues that Gasser's testimony was properly admissible because she did not participate in the unlawful recording, and she only testified as to her personal knowledge of the conversation. We agree.

In State v. Grant, this court held that the Privacy Act did not bar a

---

[3] There was another Privacy Act issue at trial related to the post-arrest recording of Gong with Detective Garden, but that is not at issue in this appeal.

detective's testimony about a conversation with a defendant where the detective had no knowledge of the illegal monitoring. State v. Grant, 9 Wn. App. 260, 267, 511 P.2d 1013 (1973). In Grant, we stated,

> The instant case does not involve an objection to the testimony by the overhearing police officers concerning the illegally-monitored and taped conversation. This case is one involving testimony to the objected-to conversation from one of the parties to that conversation. Had Detective Hume been a party to the illegal recording and taping, a different question would be presented.

Grant, 9 Wn. App. at 267.

In State v. Williams, our Supreme Court referred to Grant when distinguishing that case from the one before it. State v. Williams, 94 Wn.2d 531, 543, 617 P.2d 1012 (1980). In Williams, the federal agents who participated in the communication with the defendant also took part in illegally recording the conversation. Williams, 94 Wn.2d at 543. The court ruled:

> Unlike the situation in Grant, the federal agents and informant who participated in the conversations in the present case knew of, and took part in the illegal recordings of the conversations, and therefore obtained the information from the conversations in an unlawful manner. . . . [T]he privacy act precludes the dissemination of this illegally obtained information-whether it is disseminated by introducing the tape recordings of the testimony of the officer or civilian informant who participated in the conversation. Accordingly, the federal agents and informant cannot testify as to the contents of the illegally recorded conversations.

Id. at 543.

Grant is analogous to Gong's case before us, not Williams. There is no dispute that Gasser did not know at the time of the recording that officers illegally recorded the brief interaction between her and Gong before the entrance of the arrest team. The trial court specifically found that Gasser "did not know the audio

9

recording existed until immediately before testifying." The State called Gasser to testify about the conversation she had with Gong at the entrance of the target house. The State did not ask Gasser about the recording of this interaction, or seek to introduce it, but instead asked her to testify only about her personal knowledge of the conversation with Gong. Gasser's testimony was not barred by the Privacy Act.

Gong cites to State v. Fjermestad, 114 Wn.2d 828, 791 P.2d 897 (1990) for his contention that an unlawfully recorded conversation requires suppression of "all information and observations made simultaneously with the unlawful recording." We disagree with Gong's interpretation of Fjermestad. In Fjermestad, an undercover officer was communicating with the defendant while wearing a body wire that transmitted the conversation to nearby officers. Fjermestad, 114 Wn.2d at 829-30. Our Supreme Court specifically delineated Fjermestad from Grant, concluding that "[u]nlike the situation in Grant, the undercover officer was fully aware that he was transmitting the conversation." Id. at 834. The court held that "when an officer knowingly transmits a private conversation, without court authorization or without the consent of all the parties, any evidence obtained, including simultaneous visual observation and assertive gestures, is inadmissible in a criminal trial." Id. at 836. Because Gasser did not know her interaction with Gong was being unlawfully recorded, Fjermestad is distinguishable.[4]

---

[4] Gong also cites to other distinguishable cases: State v. Salinas, 121 Wn.2d 689, 693, 853 P.2d 439 (1993) (undercover detective wore an unauthorized body wire that transmitted his conversation with a defendant to other officers); State v. Elmore, No.

Following <u>Grant</u>, we hold that the Privacy Act did not bar Gasser from testifying at trial about her conversation with Gong inside the target house. Thus, trial court did not abuse its discretion in rejecting Gong's motion for a mistrial or refusal to grant his request to instruct the jury to disregard Gasser's testimony.[5]

<u>Unanimity Instruction</u>

Gong, who did not request a unanimity instruction at trial,[6] next asserts that the trial court erred by failing to give a jury unanimity instruction for the charge of felony communicating with a minor for immoral purposes (CMIP). He insists that because there was no unanimity instruction, it was unclear if the jury relied on the text messages sent to McDonnell or the telephone call with Gasser as the basis for the CMIP charge. The State argues that no unanimity instruction was necessary because Gong's communications with law enforcement constituted a "continuing course of conduct" warranting an exception to a unanimity instruction. We agree with the State.

A defendant's right to a unanimous verdict is rooted in the Sixth Amendment to the United States Constitution and in article I, section 22 of the Washington State Constitution. <u>State v. Brown</u>, 159 Wn. App. 1, 14, 248 P.3d

---

45531-5-II, slip op. at 3-4 (Wash. Ct. App. Apr. 21, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2045531-5-II%20%20Unpublished%20Opinion.pdf (undercover officer knowingly activated the recording device he was wearing to record an unauthorized conversation).

[5] As a result of our ruling that Gasser's testimony was not barred by the Privacy Act, we need not reach whether any error was so prejudicial as to impact the outcome of the trial requiring reversal of Gong's conviction.

[6] Gong did raise the issue at sentencing when he asked the court to find the communicating with a minor for immoral purposes conviction invalid, "withdraw" the finding of guilty, and enter a finding of not guilty, because it was unclear which communications with law enforcement the jury relied on to convict Gong. The trial court interpreted defense counsel's argument as a motion for a judgment notwithstanding the verdict and denied the motion. Gong does not challenge this ruling on appeal.

518 (2010) (citing State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988)).

Because a trial court's failure to provide a unanimity instruction affects a constitutional right, it can be raised for the first time on appeal. State v. Watkins, 136 Wn. App. 240, 244, 148 P.3d 1112 (2006). We review the adequacy of jury instructions de novo. Brown, 159 Wn. App. at 14 (citing State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

Where a defendant has engaged in multiple acts that could be the basis for a single count, the State is required to elect one act on which it relies for the conviction or the court must instruct the jury to agree on a single act. State v. Monaghan, 166 Wn. App. 521, 536, 270 P.3d 616 (2012) (citing State v Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984)). No unanimity instruction is required, however, where a defendant's criminal acts form a "continuing course of conduct." Monaghan, 166 Wn. App. at 537 (citing State v. Crane, 116 Wn.2d 315, 326, 804 P.2d 10 (1991). We review whether to apply the continuing course of conduct exception in a "commonsense manner" considering (1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate purpose. State v. Brown, 159 Wn. App. at 14 (citing State v. Love, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). "Evidence that multiple acts were intended to secure the same objective supports a finding that the defendant's conduct was a continuing course of conduct." State v. Rodriquez, 187 Wn. App. 922, 937, 352 P.3d 200 (2015).

To convict Gong of CMIP the jury had to find that: (1) Gong communicated with another person for immoral purposes of a sexual nature; (2) Gong believed

the other person was a minor; and (3) the communication was made through the sending of electronic communication.[7]

Gong did, in reality, communicate with two different people. He text messaged McDonnell and spoke to Gasser. However, Gong believed he was communicating with the same person, Kaci. And the objective of both types of communications was the same—to work out the details of their arrangement where Gong would teach Kaci about sex despite the fact that she was a minor. Through the text messages, which were exchanged within minutes both before and after the phone call, Gong confirmed that Kaci was 13, that he would bring condoms, that he would teach her and show her how to have sex, and that he would come to her house that evening. During the phone call, Gong again confirmed that Kaci was 13, that she wanted to truly experience sex, that he would bring condoms, that she might hurt a little bit, and that he had a lot to teach her.

Gong's interaction with Kaci lasted less than two hours between the time Gong sent his first text message to the time of his arrest. Reviewed in a "commonsense manner," this was not two separate crimes involving different victims at separate locations. Gong's text messages and the phone call was an on-going conversation with Kaci for a single purpose—to have a sexual encounter with a person he believed to be a 13-year-old child.

What Gong contends were two separate acts was nothing more than a

---

[7] Electronic communication was defined in the jury instructions as "the transmission by wire, radio, optical cable, electromagnetic, or other similar means, and includes, but it is not limited to, electronic mail, internet-based communications, pager services, and electronic text messaging."

13

continuous course of conduct with law enforcement that did not require a unanimity instruction.

## Prosecutorial Misconduct

*A. Shifting the burden of proof*

Gong argues that the State engaged in several acts of prosecutorial misconduct and as a result his convictions should be reversed. We conclude that none of the State's actions warrant reversal of Gong's convictions.

For Gong to prevail in his prosecutorial misconduct claims he must demonstrate that in the "context of the entire record and the circumstances at trial" the prosecutor's conduct was both improper and prejudicial. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Prejudice requires showing a "substantial likelihood that the misconduct affected the jury verdict." In re Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). Where a defendant fails to object to the prosecutor's misconduct at trial, the errors are considered waived unless the conduct was so flagrant and ill-intentioned that no jury instruction would have cured the prejudice. Thorgerson, 172 Wn.2d at 443. We review an allegation of prosecutorial misconduct under an abuse of discretion standard. State v. Osman, 192 Wn. App. 355, 366, 366 P.3d 956 (2016).

*(i) Claiming only three defenses exist*

Gong first argues that the State engaged in misconduct because the prosecutor improperly shifted the State's burden of proof by stating that there were only "three defenses that exist in a criminal case."

The State bears the burden to prove a criminal case beyond a reasonable

doubt, and it may not shift the burden of proof to the defendant. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). A criminal defendant is not required to present any evidence at trial. Osman, 192 Wn. App. at 366.

During the prosecutor's first closing argument the prosecutor said:

> I also want to talk about the three possible defenses that exist in a criminal case. There is, it was not me. Someone else did it. There is, I may have done something, but the State can't prove what I did. And then there is, I did everything that the State said I did, but I was justified, excused, or entitled for some legal reason to do it.

Defense counsel objected, telling the trial court this statement was burden shifting. The trial court overruled the objection and the prosecutor continued:

> Make no mistake about that. The State has to prove every single element. That really has nothing to do with what we're talking about right here, but I'll repeat it multiple times. The State has to prove every element.
>
> In fact, let's do this right now. The burden of proof in this case, beyond a reasonable doubt, and it's the highest burden that's put on any party in any court in this country. It's a burden that's been met and it's a burden the State bears, the State accepts, and the State has met in this case. We'll get to that.
>
> It wasn't me. I may have done something, but the State can't prove it, or I did it and I was entitled to. Usually those are exclusive, or, you know, they're not. It's not two of them. It's not all three of them. It's usually one of them, and it is in this case.

The prosecutor incorrectly suggested that there were only "three possible defenses" in a criminal trial. Absent is the scenario where no crime occurred. By listing limited defenses, the prosecutor comes dangerously close to suggesting that the defendant must actively present a defense. In context, the prosecutor's statements did not amount to burden shifting because the prosecutor made clear during closing argument that the State retained the burden to prove every

15

element beyond a reasonable doubt. Even if the prosecutor's list of criminal defenses was inaccurate, Gong has not established that such an error created a substantial likelihood that it affected the jury verdict

*(ii) Finding contrary evidence*

Gong next claims that the prosecutor shifted the burden of proof when he told the jury to try and find evidence that Gong did not believe the undercover officer was 13 years old.

The prosecutor told the jury:

> So in one respect, play devil's advocate. Play opposite and see what evidence you can find, not make up, of course, because you're confined to the evidence that was presented. Find what evidence was presented that suggests she is not 13.

The prosecutor went on to remind the jury that Gasser told Gong she was 13 when he came into the target house, and during an interview with a detective, Gong suggested he believed Kaci was underage. The prosecutor continued:

> What our law requires is you look at the evidence that you have and you say to yourselves, do I have enough? And what I would suggest to you is part of that process is to say, what evidence can we find from the – what evidence can we find in this case that refutes his belief that [she's] 13. That doesn't mean presume he knew it to begin with. Doesn't mean the State doesn't have to prove. . . he believed she was 13. It means, look at the evidence that contradicts the State's proof. There isn't any.

Defense counsel objected, arguing that the prosecutor was burden shifting. The court overruled the objection.

The prosecutor continued, "You have to determine, did he believe she was 13, and did he intend to have sex? And the uncontroverted evidence from the witness stand, and even from Mr. Gong's mouth in his interview, is yes to both of

those questions."

The prosecutor later returns to this issue, and referring to the photo of Gasser said,

> All of what Mr. Wagnild said about Detective Gasser as a person is all true. She is an adult, she is female, and it was her picture. If you look at Exhibit Number 3 and you say, if I were told that this is a 13-year-old girl, then I got this picture, there's no chance I could ever believe it. Fine. Not going to get in your way. Doesn't really matter whether or not you think that could be a 13 year old. What you have to look at is what evidence did Mr. Gong – what evidence from Mr. Gong do you have that he didn't believe it? What clarification question did he ask on the text messages? What conversation did he have during the telephone call with Detective Gasser?

A prosecutor has "wide latitude to comment on the evidence introduced at trial and to draw reasonable inferences from the evidence." Osman, 192 Wn. App. at 367. A prosecutor may properly reference the defense's lack of evidentiary support for their claims. Id. We have previously held that a prosecutor's "mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense." State v. Jackson, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009).

The prosecutor told the jury that the State had the burden to prove that Gong believed Kaci was underage. In anticipation that Gong would contest that element of the crime, the prosecutor told the jury to consider all the evidence about what Gong knew of Kaci's age and to consider the lack of evidence that "contradict[ed] the State's proof." In context, when the prosecutor asked "what evidence from Mr. Gong do you have that he didn't believe it?" it was in reference to Gong's statements in the text messages and during the phone conversation with Gasser. The prosecutor never suggested Gong failed to present evidence

17

at trial. The prosecutor's comments about the evidence did not improperly shift the burden of proof to the defense.

*(iii) Minimizing proof*

Gong also argues that the prosecutor minimized the burden of proof when he told the jury it could disregard the evidence. Gong refers to the prosecutor recalling Gong telling a detective there was only a 50 percent chance he was going to have sex with Kaci and then arguing, "I suppose it could be argued that that isn't beyond a reasonable doubt. It's not. But who cares? There's a lot in this world that's a grey area but having sex with a child isn't one of them." We first note that Gong misquotes the statement and takes it out of context. In closing, the prosecutor stated,

> [Detective Garden asked] "Would you have had sex with a 13 year old?" [and Gong said] "Only if she agreed." "Only if she agreed." Those were his words.
> [Gong] said at some point, according to Detective Garden, 50 percent chance he was going to have sex. I suppose it could be argued 50 percent isn't beyond a reasonable doubt. It's not. But who cares? The fact of the matter is, folks, you know, there's a lot in this world that's gray area. Not a lot that's just yes or no, on or off, black or white. A lot of stuff has middle ground. You know what doesn't? You either will have sex with a child when you're an adult or you will not. There isn't any gray area there. There isn't any adult – in this case, male – who says, "Thirteen. Well, if she wants to, I guess it's okay if we're going to have sex, but only because she wants to." That's never going to happen for someone who – for someone who isn't willing to have sex with a 13 year old. It's not a normal thought process. It's not a reasonable thought process, but none of those things matter.
> What does matter is, is that you have to remember that when Mr. Gong is talking to Detective Gasser and Agent McNelis, what he's doing is he's sitting in that house where he showed up to have sex with Kaci. He's in handcuffs. He's been told he's under arrest for showing up to have sex with a 13 year old, and so he minimizes a couple things. He minimizes a couple things. Does that

18

exonerate what he did, or is he just not making it as bad as it really is from the way that the evidence comes forward?

Gong did not timely object to the statement he now challenges on appeal.[8] Regardless, in context, the prosecutor was arguing to the jury that Gong's post-arrest statement, that there was only a 50 percent chance he was going to have sex, was self-serving and did not establish reasonable doubt in light of all the evidence. Arguing that the evidence is weak is not the same as telling the jury to disregard it. The prosecutor argued, "Hold the State to proving this case beyond a reasonable doubt because when you review all of the evidence that's here, what you'll find is that the defendant spoke to a 13-year-old girl by text messages about sexually immoral subject, and believing she was 13, he took a substantial step toward engaging in sex with her."

The prosecutor's statements did not minimize the State's burden of proof. Even if the statements were improper, they were not so flagrant and ill-intentioned that no jury instruction would have cured the prejudice.

B. *Disparaging defense counsel*

Gong claims that the prosecutor engaged in misconduct when he "repeatedly disparaged defense counsel's closing argument by calling into question his integrity." Gong argues multiple statements by the prosecutor in rebuttal are problematic. First, the prosecutor told the jury:

---

[8] Gong claims he did object, citing to another objection in the record made seven paragraphs later to suggest an objection was made here. The record indicates that the objection made related to another statement. After the prosecutor stated "It means, look at the evidence that contradicts the State's proof. There isn't any. The reason why we have a standard of beyond a reasonable doubt is –" Gong objected "to that burden-shifting argument," which the court overruled.

It's been said, when you have the facts on your side you pound the facts in closing argument. When you have the law on your side, you pound the law, and when you have neither you pound the table.

Second, the prosecutor described the defense closing statement: "You just got 40 minutes [that] was, look over there, so that you won't look there." Third, the prosecutor expressed frustration at having to address the adult website's age-restriction pop-up notice:

It's ridiculous that I'm standing up here talking about it because then the defense wins and you're not focused on the facts. You're focused on the made-up fiction. You're focused on the closing argument Mr. Wagnild gave, which is, focus on anything except [Gong's] behavior[.]"

Gong did not object to any of these statements at trial. The prosecutor was responding to the following defense argument:

So let's talk about the investigation and why they fell short. One of the first problems, of course, is they go to this website. It's called AdultLook.com. That is what it is, but anyone going to it doesn't – it's not like it's called minors.com or teens.com. I mean, this is for adults, and it has this notice when you arrive at the website. And you know, Sergeant McDonald kind of glossed over this notice. And because, well, you don't really have to pay attention to it. But the notice is important here, and you're going to have it. It's Exhibit Number 28, and here's why that – it's important. It's because this is a notice. It's something that pops up on the screen that you're sort of forced to look through and acknowledge, and it has a line in it. And you're going see it, but the line says, "We do not allow links to children, to child pornography, or minors."

All right. Now, you can say, well, you can just disregard that, okay? Yes, it can be disregarded, but think about what it says to someone who's looking at it. Someone looks at that and says, oh, hey, look at this. The website is letting me know that it takes some steps to make sure because it's saying it does not allow it.

It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity. <u>Thorgerson</u>, 172 Wn. 2d

20

at 451 (citing State v. Warren, 165 Wn.2d 17, 29–30, 195 P.3d 940 (2008); State v. Negrete, 72 Wn. App. 62, 67, 863 P.2d 137 (1993). Where the comments can fairly be said to focus on the evidence, no misconduct occurs. Thorgerson, 172 Wn.2d at 451.

The prosecutor's "made-up fiction" comment improperly suggested defense counsel was making up facts to the jury. Defense counsel's argument was based on reasonable inferences based on admitted evidence. The prosecutor's comments went further than suggesting that no one would reasonably believe these notices prevented minors from participating on the website. The prosecutor suggested that the fiction was "made-up" by defense counsel. However, the comment was not so flagrant and ill-intentioned that it could not have been cured with a jury instruction. Because Gong did not timely object, he waives this claim. Even if it could be argued that a later objection applied to this comment, Gong fails to show a substantial likelihood that the misconduct affected the jury verdict. We do not find that the other challenged comments discussed above to be improper.

*C. Witness credibility*

Gong next asserts that the prosecutor engaged in misconduct when he told the jury that Gasser was either lying or telling the truth and they could not pick and choose what they believed.

During closing, the defense questioned the reliability of Gasser's testimony. In response, the prosecutor told the jury:

> [It's] fascinating to hear how badly Detective Gasser behaved and
> how much she manipulated you when she destroyed her notes and

when she, you know, relayed the conversation that happened at the door and all the other things that she did wrong, and yet then the very words out of [defense counsel's] mouth were, and I quote, "Detective Gasser was very honest with you. She said, 'I don't look 13.'" You can't have it both ways. She's either telling you the truth or she's not[.]

Gong objected to the prosecutor's statements stating that this was an improper argument, but the court overruled the objection. The prosecutor continued:

You can't pick and choose. You can decide what words out of her mouth you believe and don't. You could actually pick and choose. If you think she told you something that's not true, flat reject it. I'm asking you, I'm encouraging you, I'm demanding that if you find she misrepresented anything, reject it. And if you found that he made up the facts, reject those. Concentrate on the evidence that was presented to you, the true facts of this case. Look at the entirety of the communication and look at any evidence you have that this defendant thought he was dealing with an adult from five minutes in when he's told, "I'm 13," until he goes into handcuffs. It's not there.

It is the province of the jury to determine witness credibility. State v. Beasley, 126 Wn. App. 670, 690, 109 P.3d 849 (2005). Whether a witness testifies truthfully is an issue entirely within the province of the trier of fact. Thorgerson, 172 Wn. 2d at 443 (citing State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010).

The prosecutor's comments prior to the objection suggested that the jury had to either accept all of Gasser's testimony or reject all of Gasser's testimony, which is incorrect. The context of the prosecutor's comments after the objection was confusing. The prosecutor said, "You can't pick and choose," and immediately followed with "You can decide what words out of her mouth you believe and don't. You could actually pick and choose."

Though the prosecutor's comment prior to the objection was improper,

and the comment after the objection was confusing, the prosecutor immediately told the jury that it could choose what parts of a testimony it wished to believe and what parts it wished to reject. Gong fails to show a substantial likelihood that the misconduct affected the jury verdict.

*D. Nationalism*

Finally, Gong claims the prosecutor engaged in misconduct by asking the jury "to consider [Gong's] immigrant status as a factor in the case" when the prosecutor, in closing, stated,

> It's the greatest country in the entire world. What we say is that you can have unlimited freedoms here, but there's a price for that freedom. And that is that you will be held accountable for your actions. Mr. Gong chose to pursue a sexual encounter with someone who told him she was 13 and never told him anything different. He chose to do that. And now he wants you to excuse him.

Gong did not object to the prosecutor's statement. Before and throughout trial, defense counsel repeatedly raised the issue that Gong spoke Chinese, suggesting the possibility that his text messages were mistranslated or misunderstood.[9] It was in this context that the prosecutor elicited evidence to establish Gong's proficiency in English. The prosecutor's inquiries in this regard were both relevant and limited to rebut a defense strategy.

However, the prosecutor's closing remarks had nothing to do with arguing Gong's proficiency with English despite being an immigrant. It, instead, portrayed Gong as an outsider who abused his privilege of the freedom this country offers and who must pay a price for doing so. Such an argument was

---

[9] Gong relied on a Chinese interpreter at trial.

23

improper, but the statement was not so flagrant and ill-intentioned that it could not have been cured with a jury instruction. Because Gong did not object to the comment, he waives this claim. Even if the comment could be considered flagrant and ill-intentioned, we do not believe Gong met his burden in showing a substantial likelihood that the misconduct affected the jury verdict.

Preservation of Evidence

Gong's last claim on appeal is that the State violated his constitutional right to due process by not preserving the AdultLook.com pop-up notice as evidence. We disagree.

To comport with due process under the Fourteenth Amendment, the State has an obligation to preserve and disclose material exculpatory evidence for use by the defense. State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994) (citing Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)). "Material exculpatory evidence" possesses both an "exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Wittenbarger, 124 Wn.2d at 475 (citing California v. Trombetta, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). We review de novo a trial court's determination about whether missing evidence is materially exculpatory. State v. Burden, 104 Wn. App. 507, 512, 17 P.3d 1211 (2001).

Before trial, Gong filed a motion to dismiss the case, arguing that the State violated CrR 8.3 by failing to preserve potentially exculpatory evidence. The evidence the State failed to preserve was the pop-up notice "disclaimer" on

AdultLook.com that informed users that only adults were permitted on the website, which required a user to click on a button indicating that they agreed to the terms and conditions. The motion included a declaration from a private investigator stating that AdultLook.com included a disclaimer on its website but that she could not find the disclaimer in effect in July 2018. Gong provided the court with an example of what the AdultLook.com disclaimer may have looked like. The disclaimer was not material exculpatory evidence. Its existence does not change the fact that Kaci told Gong she was 13. Also, Gong fails to show that there was no "comparable evidence" available.

There was readily comparable evidence. Gong's own private investigator was able to find an AdultLook.com disclaimer that comported with his own recollection of when he accessed the site: a message that indicated that no minors were allowed on the website. The State stipulated that there was such a pop-up message and asked law enforcement to testify about the existence and content of the pop-up message:

> [State]: When you go to adultlook.com and just log into the site, are you confronted with any information before you actually enter the site?
>
> [Witness]: Yeah. There's a disclaimer that you have to agree to being over 18.

The State continued to inquire about the disclaimer, asking the detective to confirm that the disclaimer provided to the court contained similar verbiage to the one he would have seen in July 2018. The State did not dispute that the disclaimer existed or that it stated all users must be 18. The evidence at trial established that when Gong originally text messaged Kaci he was messaging a

25

profile that stated she was 18 years old. It was only after Gong began messaging Kaci that she said she was actually 13. Gong does not provide any reason to believe that the July 2018 disclaimer was not comparable to the disclaimer he provided to the trial court.

There was no due process violation with regard to the website disclaimer.

CONCLUSION

Admission of Gong's statements by an eyewitness officer unaware of the improper recording of the conversation did not violate the Privacy Act. The trial court was not required to provide a jury unanimity instruction because the alleged separate acts of communications by Gong was nothing more than a continuous course of conduct. Even where the prosecutor made improper statements during closing argument, they either were not so flagrant and ill-intentioned that they could not be cured with a jury instruction, or Gong failed to show a substantial likelihood that the misconduct affected the jury verdict. Lastly, Gong failed to establish a due process violation when the evidence at issue was not materially exculpatory, and Gong was able to introduce comparable evidence.

We affirm.

_____
Coburn, J.

WE CONCUR:

_____        _____
Bowman, J.                                              Andrus, C.J.

26